**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **CURTIS CUSTOMS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No. 5:19-cv-01085-FB** |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **JOEL RUSSO,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Curtis Customs, LLC by and through its attorneys, hereby files this Original Complaint against Defendant, Joel Russo and would show as follows:

### I.     NATURE OF THE ACTION

1.     This is a trade secrets and Lanham Act action to end Defendant's unauthorized and unfair manufacturing and sales of specialized bolt actions for rifles; the design of which Defendant misappropriated and copied from Plaintiff.  Plaintiff Curtis Customs, LLC, designs and sells exceptional specialty bolt actions and accessories for rifles.  Defendant Joel Russo worked with Plaintiff for a brief period as a sales agent.  Soon after he departed the company, he began offering a competing specialty bolt action that he simply unlawfully obtained from Plaintiff.  As a result Plaintiff brings this lawsuit.

### II.     PARTIES

2.     Plaintiff Curtis Customs, LLC ("Curtis") is a Texas limited liability company with its principal place of business located at 5000 Private Road 2323, Hondo, Texas, 78861.

3.     Defendant Joel Russo ("Russo") is an individual resident of Pennsylvania whose address

is 6569 Windmere Rd., Harrisburg, Pennsylvania, 17111.

## III.    JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction over the claims asserted by Curtis under 28 U.S.C. § 1332 because the claims involve citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.      This Court has personal jurisdiction over Russo because he contracted with Curtis as a salesman and consultant.  Curtis is located within the Western District of Texas.  Portions of the agreement between Curtis and Russo were performable within the State of Texas, therefore Russo has minimum contacts with Texas to impose personal jurisdiction on him within the State of Texas.

## IV.    FACTS

6.      Plaintiff Curtis is a company that sells specialty bolt actions and accessories for rifles.

7.      In November 2012, Curtis contracted with Russo as a consultant and salesperson.  At that time, Curtis was in the process of developing its own line of unique bolt actions and wanted the assistance of someone to help in that process.  Russo came on board as an independent contractor to help.

8.      In the course of developing the product, Curtis engaged a specialty manufacturer, Plouse Precision Manufacturing ("Plouse") located in Pennsylvania, to assist with ultimate manufacturing.  Curtis spent considerable time and money working with the manufacturer to complete the design of the custom bolt action.  At all times Curtis considered its design to be its unique, proprietary trade secret.

9.      After the bolt action products were designed, Plouse begin manufacturing the products for Curtis.  Curtis then began selling its products in the United States.  The Curtis customized

bolt actions were and are considered high quality products and were successfully received by the marketplace.

10.     In the course of his work for Curtis, Russo was responsible for selling the bolt actions. Over the course of years, Russo was paid an agreed upon commission for his work in selling the bolt actions.

11.     Initially, things between Curtis and Russo were amicable and the agreement was operating the way both intended.  However, in April of 2019, Russo wanted to and requested that he become an owner of the company.  Curtis declined to extend an ownership interest to Russo and suggested things remain as they had been and as the parties' intended them to be.

12.     Soon thereafter, Russo ceased working with Curtis.  Without disclosing his future plans to Curtis, Russo instead began selling identical bolt action products through his company, Ossur Consulting, LLC d/b/a Terminus Actions.

13.     Russo based his competing bolt action on the proprietary designs that he obtained while working with Curtis.

14.     Further, Russo claims to be the owner of Curtis' bolt-action designs.  Russo is not the owner.  The drawings clearly list Curtis as the owner.  Curtis applied for a provisional patent on the bolt action designs and Russo was not listed in anyway as an owner of the drawings.  Yet, despite not being an owner of the drawings in any form or fashion, Russo has repeatedly made claims of ownership of Curtis' designs on various social media websites and online portals.  For example:



**Aug 1, 2019**                                                                                      #33

**Joel Russo**
Well-Known Member

Messages:        3,235
Joined:        Jul 5, 2006

I'll be happy to answer that question.....

They look a lot like the other actions because I own the prints to those other actions... and since I own the prints, I made changes to the prints to eliminate a few design flaws and to add additional features. So they may look like my old designs, but they are dimensionally different with upgrades.

CEB, Doublezranch, MudRunner2005 and 4 others like this.



**Jul 25, 2019**                                                                                     #1

**Joel Russo**
Well-Known Member

Messages:        3,235
Joined:        Jul 5, 2006

Most of you know that I separated myself from another custom action company because I was unwilling to compromise on my demanding standards and fundamental business practices. I played key roles in that business that included designing actions to being solely responsible for making the original designs marketable, to handling customer service.

Since my separation, I have spent a considerable amount of time and resources designing a new line of actions which are now being marketed under the Terminus brand.

My original designs were successful, so it was an easy decision to improve upon them and eliminate a few known design flaws. I was able to accomplish this task by making both dimensional and engineering changes to key areas both on the bolt and the receiver. The first Terminus prototypes were close, but still exhibited some minor issues in the areas that I was targeting improvement. The second prototype proved to be much better and met my standard. Field testing was concluded and the results exceeded my expectations.

The Terminus design offers a refined 3 lug action that is sure to please the most discriminating shooter. I am confident Terminus will define excellence not just in products, but in operation. I personally guarantee my products, and guarantee an exceptional customer experience and service.

I am both grateful and humbled to have such an incredibly talented Team that has been diligently working with me to accomplish our mission. I'm confident with this team comprised of Special Operations Professionals, LE Professionals, competitive shooters, custom rifle builders, and industry leaders, that Terminus will join the ranks with other successful custom actions in the market.

Joel

lilharcher, Mainmechanic, Tidus56 and 14 others like this.

4



15.    The first three screen shots were obtained from an online forum located at

www.longrangehunting.com.   The last two were obtained from an online forum located at

www.snipershide.com.

16.    Upon information and belief, Russo surreptitiously obtained and/or misappropriated

Curtis' product designs to recreate and replicate Curtis' specialty bolt actions.   Indeed, within

days of Russo separating from Curtis, Terminus and Russo began selling identical bolt actions as

Curtis'.  Russo even admitted in online posts that he was selling Curtis' "Vector" bolt action.

17.     Russo claims he has now modified Curtis' designs and allegedly "improved" upon Curtis' bolt actions.  Russo continues to hold himself out as the designer and owner of the designs of Curtis' actions.

18.     Since August 1st, 2019, Russo has been palming off Curtis' bolt actions and misrepresenting them as his own.  Upon information and belief, there is no functional or structural difference in Curtis' bolt actions and Russo's "improved" bolt actions.  Exceptionally minor and insignificant "cosmetic" changes appear to have been made by Russo in his latest iterations of the products.

19.     The following comparison shows Curtis's bolt action on the left compared to Defendant's on the right:



20.     Not only has Russo been using Curtis' supplier lists to find manufacturers of his products; Russo has also been using Curtis's customer list to get a leg up on sales for his new venture.

## V.     CLAIMS
**FEDERAL DEFEND TRADE SECRETS ACT**

21.     The Federal Defend Trade Secrets Act, 18 USC § 1831 *et. seq.* entitles Curtis to relief from Defendant's actions.

22.     Curtis owns certain trade secrets, as defined by 18 USC § 1839, including without limitation the plans and engineering drawings forming the basis of the parts to Curtis' bolt action rifles.  Curtis has taken reasonable measures to keep its confidential information secret.  Curtis' trade secrets derive independent economic value from not being generally known to or readily ascertainable by the general public.

23.     Russo's actions in taking and using Curtis' trade secrets amounts to misappropriation under 18 USC § 1836 because Russo disclosed and used the trade secret information without the express consent of Curtis.  At the time of its disclosure and use, Russo knew or had reason to know that the knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.  18 USC § 1836(5)(B)(ii)(II).

24.     Russo's use of the trade secrets has caused damages to Curtis.  Russo's misappropriation has caused lost sales to Curtis, and unjust enrichment of Russo.

25.     Upon information and belief, the misappropriation by Russo of Curtis' trade secrets was willful and malicious and Curtis hereby requests exemplary damages and an award of reasonable attorney's fees as permitted by statute.

26.     Upon information and belief, Russo will continue to misappropriate Curtis' trade secrets, causing additional damages to Curtis.

27.     As there is no adequate remedy at law, Curtis requests the imposition of a preliminary and permanent injunction against Russo to prevent use of Curtis' trade secrets.

**LANHAM ACT (FALSE ADVERTISING)**

28.     Russo and Curtis are now competitors in the specialty bolt action market.   Since separating from Curtis, Russo has begun selling actions through his company, Ossur Consulting, LLC d/b/a Terminus ("TERMINUS"), Russo has alleged he owns the original Curtis designs, that he was responsible for their creation and that he has the authority to operate and sell Curtis' products.

29.     Russo even admitted in at least one online forum that he "ran a small batch" of Curtis' original designs and changed "nothing but the name to ZEUS."

30.     Russo has therefore admitted that he, in connection with a good or service, used in commerce, a word, name, symbol or device, which was likely to cause confusion, or deceive as to the affiliation, connection, or association of such person or as to the origin, sponsorship, or approval of his goods.  15 USC § 1125(a)

31.     Curtis has been damaged by Russo's actions because Curtis has suffered diverted product sales, lost profits and Russo has been unjustly enriched selling CURTIS' products with Russo's branding on them.

**TEXAS UNIFORM TRADE SECRET ACT**

32.     Curtis owns certain trade secrets as defined under the Texas Civil Practices and Remedies Code § 134A.002, including without limitation, scientific, technical and/or engineering information about its bolt actions contained in its engineering drawings. Curtis' trade secrets have independent economic value from not being generally known to the public.

33.     Russo's actions constitute misappropriation under Texas Civil Practices and Remedies Code § 134A.002; Russo disclosed and used the trade secret information, without the express consent of Curtis.  At the time of its disclosure and use, Russo knew or had reason to know that

the knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.

34.     Russo's use of the trade secrets has caused damages to Curtis.  Russo's misappropriation has caused lost sales to Curtis, and unjust enrichment of Russo.

35.     Upon information and belief, the misappropriation by Russo of Curtis' trade secrets was willful and malicious and Curtis hereby requests exemplary damages and an award of reasonable attorney's fees as permitted by statute.

36.     Upon information and belief, Russo will continue to misappropriate Curtis' trade secrets, causing additional damages to Curtis.

37.     As there is no adequate remedy at law, Curtis requests the imposition of a preliminary and permanent injunction against Russo to prevent use of Curtis' trade secrets.

**UNFAIR COMPETITION**

38.     Curtis is entitled to relief under Texas common law for unfair competition as to Russo.

39.     Curtis has a cognizable and protectable legal interest in its confidential information, including without limitation its trade secrets and engineering drawings.

40.     Curtis expended substantial time and effort developing its confidential / trade secret information.  Curtis' money and sweat equity invested in creating its confidential information, rapidly paid off after launching its first successful bolt action products.

41.     Upon information and belief, through the unlawful use and disclosure of Curtis' trade secret information, Russo was able to rapidly (if not immediately) enter the bolt action market without being required to expend the time and effort that Curtis expended.  Russo thereby acquired a special and unfair competitive advantage over Curtis.

42.     Upon information and belief, Russo's special and unfair competitive advantage resulted

in harm to Curtis including, diverted product sales, lost profits and Russo's unjust enrichment.

43.     Curtis seeks damages from Russo, including damages from diverted product sales, lost profits and Russo's unjust enrichment (including Russo's profits), arising from Russo's disclosure and use of Curtis' confidential / trade secret information.

**TEMPORARY RESTRAINING ORDER**

44.     Pursuant to 18 USC 1836(b)(3) the Court may grant an injunction to prevent actual or threatened misappropriation.  Under TEX. CIV. PRAC. & REM. CODE § 134A.003 the Court may also enter an injunction to prevent the actual or threatened misappropriation of trade secrets.

45.     The nature of the misappropriation statutes involved in this case do not require Curtis to prove to the Court imminent and irreparable harm.  The United States Congress and the Texas Legislature recognized when they drafted the two statutes at issue that misuse or threatened misuse of someone's trade secrets is, in and of itself, sufficient harm to justify the imposition of a trade secret.

46.     Thus, in order to justify the imposition of a Temporary Restraining Order, Curtis need only show that he owns certain trade secrets and that Russo is misappropriating them or has threatened to misappropriate them.

47.     The evidence cited below clearly indicates that Curtis owns certain trade secrets; being the engineering drawings.

1.47.1. **Exhibit 1-A**, attached hereto are redacted versions of the engineering drawings, which Curtis paid for, that were used to create the "VECTOR" bolt action.

1.47.2. **Exhibit 1-B**, attached hereto is a photographic side by side comparison of Curtis' bolt action and Russo's bolt action.

1.47.3. **Exhibit 1-C**, attached hereto is a true and correct copy of the provisional patent

filed by Curtis covering the designs for the VECTOR bolt action.

48.     Clearly Curtis owns a trade secret in the bolt actions Curtis developed.

49.     As the evidence below further indicates, Russo is misappropriating Curtis' bolt actions and attempting to pass off Curtis' designs as his own.

    1.49.1. **Exhibit 1-D**, attached hereto is a posting from Russo wherein he claims to have sold exact duplicates of the VECTOR bolt action, having only changed the name VECTOR to ZEUS.

## 2.  JURY DEMAND

1.     Curtis demands a trial by jury and has paid, or will pay the jury fee.

## 3.  PRAYER

1.     Curtis prays this Court, upon notice and hearing issue judgment in favor of Curtis for the following relief:

    3.1.1.   Damages suffered by Curtis as a result of Russo's conduct;

    3.1.2.   Pre-judgment interest;

    3.1.3.   Exemplary Damages;

    3.1.4.   Costs of Court;

    3.1.5.   Preliminary injunctive relief;

    3.1.6.   Permanent injunctive relief; and

    3.1.7.   Any other relief the Court deems proper.

Respectfully Submitted,

CHUNN, PRICE, HARRIS & SLOAN PLLC
1000 Central Parkway, N. Suite 100
San Antonio, TX 78232
Telephone   (210) 343.5000
Fax          (210) 525.0960


_____ /s/ *Jeremy Sloan*_____
Jeremy R. Sloan
State Bar No. 24054995
jsloan@cphattorneys.com


John Saba
State Bar No. 24037415
Email: john@wiffliffcutter.com
Wittliff Cutter Austin, PLLC
1803 West Avenue
Austin, TX 78701
Telephone: (512) 960 – 4865
Fax          (512) 960 - 4869

*Attorneys for Plaintiff Curtis Customs, LLC*